## MOLL VS. SEMLER and another.

### *New Trial in Equity.*

1. The circuit court may grant a new trial in a suit in equity, under proper circumstances.

2. Plaintiff sought to rescind a sale of land to him by defendants, and recover moneys paid thereon, upon the ground that while the purchase price was $3,000, the real value did not exceed $1,000 or $1,200, and that he had been induced to purchase by the false and fraudulent representations of the defendant V. as to the value, at a time when there existed certain special relations of trust and confidence between him and said V. After judgment for the plaintiff, the defendants moved for a new trial, on affidavits tending to show the land worth $2,000 to $2,400, and an affidavit of the defendant S. that he had been advised by his counsel at the former trial that the value of the land was not a material issue, and had thus been prevented from introducing evidence of such value. *Held*, that the granting of a new trial under the circumstances was not an abuse of discretion, especially as it is doubtful whether the case made by the plaintiff would justify a judgment of rescission.

APPEAL from the Circuit Court for *Washington* County.

This appeal was taken by the plaintiff from an order of the court vacating its judgment rendered in favor of the plaintiff, and awarding a new trial. The following statement of facts was prepared by Mr. Justice COLE, as a part of his opinion:

This is an appeal from an order granting a new trial. The action is in equity, brought by *Moll* to rescind a contract for the purchase of real estate and to recover back what he has paid on the contract. The ground upon which this relief is sought by the plaintiff is, that he was induced to purchase the property by false and fraudulent representations on the part of the defendant *Vollmar*, as to its value. The real estate purchased was farming lands situated near the village of West Bend, in Washington county; and the case attempted to be proven by the plaintiff was, that *Vollmar* falsely represented

that the property was worth $3,000 or more, but that he would let the plaintiff have it, with some personal property, for $2,700, because the plaintiff was a countryman of his; while the actual value of the property, at the time of the making of such representations and the date of the contract, did not exceed $1,000 or $1,200. It appears that the plaintiff was an Austrian by birth, and immigrated to this country in 1867, settling at West Bend. He had no friends in this country, and brought with him a letter of introduction to *Vollmar* from the latter's brother-in-law in Austria. *Vollmar* had been some time in the country, and, as the court below found, and as the testimony shows, was a sharp, shrewd business man, a countryman of the plaintiff, and had resided many years at said village. The court below further found, as matters of fact, that the plaintiff placed great confidence in *Vollmar*, and was accustomed to consult him upon business matters; that the plaintiff made him his depositary of about $800, without taking any note or receipt therefor; that the plaintiff relied upon him, and was governed by his advice, in making the purchase, being himself ignorant of the value of real estate in this country. And the court also found, upon the evidence, that the defendant *Vollmar* took advantage of his position and influence over the plaintiff, and induced him, by fraudulent representations as to the value of the land, and through the undue influence which he exercised over his mind, to enter into the contract; and it ordered the contract to be canceled upon that ground.

The defendants made a motion for a new trial, founded upon several affidavits, one of which was the affidavit of the defendant *Semler*, who states that previous to the trial he was informed and advised by his counsel that the value of the land described in the contract was not a material issue upon the pleadings, and that he gave no attention to that subject, and did not produce witnesses to testify to the value of the property, believing that it would be impossible for the plaintiff to bring any proof that the said property at the time of sale was

not worth very nearly the whole sum the plaintiff agreed to pay therefor. The other affidavits were made by citizens of West Bend who were acquainted with the value of the real estate in question, and who testify that at the time of the purchase the property was worth from $2,000 to $2,400. These affidavits on the part of the defendants were met by several counter affidavits produced by the plaintiff, wherein the witnesses testified that the property at that time was worth only about $1,000 or $1,200.

*Frisby & Weil*, for appellant, argued that there was no surprise that would warrant the granting of a new trial (*Jones v. Parish*, 1 Pinney, 494; *Sproul v. Ins. Co.*, 1 Lans., 71–74; *Floyd v. Jayne*, 6 Johns. Ch., 479–482); and that "where a party alleges surprise as a ground of his application for relief, he is bound to show that some act prejudicial to him has been done, which, with proper inquiry into the facts of the case, he could not have anticipated, and against which he could not have protected himself with due diligence." *Craig v. Fanning*, 6 How. Pr. R., 336. 2. That by denying a previous motion of defendants for time to get testimony as to the value of the land, after all the evidence was in, the court had ruled substantially on the same question, and the matter thus became *res adjudicata*, reviewable only by appeal. *Pierce v. Kneeland*, 9 Wis., 23; *Willett v. Fayerweather*, 1 Barb., S. C., 72. 3. That where the fraud and undue influence were conclusively proven, it was error to set aside the judgment merely to enable defendant to show a *less* inadequacy of price than that alleged and shown by the plaintiff; and especially when plaintiff's counteraffidavits overcame the proposed testimony for defendants on the subject of value. 4. That a motion for a new trial cannot be granted in an equity cause on the ground that the decision of the court therein was erroneous, but such a motion is applicable only to trial by jury (2 Whit. Pr., 3d ed., 433); and that the motion on that ground is made to perform the office of an appeal, which cannot be done. *Spafford v. Janesville*, 15 Wis.,

474–77; *Edwards v. Janesville*, 14 id., 26. 5. That the judgment rendered was right, and should stand. 1 Story's Eq., §§ 166, 167, 192, 197, 198, 200, 246, 308, 323; Willard's Eq., 147, 170, 171, 172, 203, 204; *Smith v. Mariner*, 5 Wis., 551, 575; *Picard v. McCormick*, 11 Mich., 69, 73, 74; *Seymour v. Delancey*, 6 Johns. Ch., 222; *Smith v. Countryman*, 30 N. Y., 655, 681; *Taylor v. Fleet*, 1 Barb., S. C., 471, 475; *Mead v. Bunn*, 32 N. Y., 275; *McClellan v. Scott*, 24 Wis., 81; Kerr on Fraud, etc., 188–190, 310, 311.

*Butler & Winkler*, for respondents, argued that rehearings — which are new trials — in equity cases are as familiar as at common law, and the court, on these motions, always sits in review of its own rulings (2 Dan. Ch. Pr., 1540); and that if the more regular practice would be to make a case and ask the review upon that, any objection to the regularity of the practice in this case was waived by the failure to make it in the court below. As to the merits of the judgment which had been vacated, they argued that equity will not interfere where the representation complained of as fraudulent is only " the common language of puffing and commendation " (Story's Eq. Jur., § 201); nor where it is purely matter of opinion, both parties having equal facilities of inquiry and for forming independent judgments (Story's Eq. Jur., §§ 191, 197, 198); nor where the purchaser fails to avail himself of the means of knowledge open to him (id., §§ 199, 200a); nor where, upon discovery of the facts, he continued to exercise acts of ownership over the property, and to recognize the contract, and does not move promptly to rescind (*Akerly v. Vilas*, 21 Wis., 88; *Williams v. Ketchum*, id., 432; *Booth v. Ryan*, 31 id., 45); nor where there is not clear proof of the fraudulent misrepresentations, and that they were made under such circumstances as to show that the contract was founded upon them (Story's Eq. Jur., § 200); and that the evidence here does not present such a case.

COLE, J.    We are inclined to hold that there was no abuse of discretion on the part of the court below in granting a new trial.    It is a matter of some doubt, perhaps, whether, upon the facts as disclosed by the evidence, there was such a case of fraud established as justified the rescission of the contract. Upon that point, however, we must not be understood as expressing a definite opinion, but only as saying that to our minds the case is not entirely clear, and the court below was unquestionably right in proceeding with much caution.    It is possible that such a relation of confidence and trust existed between the plaintiff and the defendant *Vollmar*, or from the great influence which the latter acquired over the former, that the parties did not stand upon an equal footing, and that any representations made by *Vollmar* in respect to the value of the property the plaintiff had the right to rely upon without seeking information from other sources.    If such a relation did in fact exist, then it was clearly the duty of *Vollmar* not to take advantage of his position and influence for the purpose of inducing the plaintiff to purchase property of him at a price far above its actual value.    The doctrine is familiar and elementary, that, as between parties standing in a fiduciary relation, the utmost good faith must be observed, and that a court of equity will see to it that the confidence which has been reposed by one party in the other shall not be betrayed.    There are, doubtless, strong grounds for saying that under the circumstances *Vollmar* and the plaintiff held some such relation to each other, and that it would be inconsistent with the principles of equity to allow the former to obtain any advantage at the expense of his confiding countryman.    The testimony introduced by the plaintiff tended to show that the real estate was not worth what *Vollmar* represented its actual value to be, when the purchase was made.    It is said by the counsel for the defendants, that the plaintiff was an intelligent man, competent to do business; that the real estate was before his eyes, was the frequent subject of discussion between him and others; and

that he dickered and bargained with *Vollmar*, as to the price and terms, upon an equal footing. It is not our purpose to go into any general discussion of the case upon the merits. What we have said is merely intended to show that to our minds there was no abuse of discretion on the part of the circuit court in granting a new trial. The value of the property at the time of the purchase was an important question in the case. This question, it appears, the defendants had not deemed it necessary to meet with evidence on their side at the trial, for reasons already stated. The circuit court had better opportunities for knowing whether anything had occurred during the trial calculated to prevent the defendants from meeting that issue. And we are unable to say that the court did not exercise a sound legal discretion upon all the facts before it.

Of the power of the court to grant a new trial in an equity case we think there can be no serious doubt. That power has been exercised by this court on remanding causes to the circuit, where the circumstances of the case were such as to require it in order to do complete justice.

*By the Court.* — The order of the circuit court granting the new trial is affirmed.